The appellant, Joseph Roberts, filed his bill, in the superior Court of chancery, for the Richmond district, *against Reuben Jordan and Benjamin Jordan, for an injunction to stay proceedings on a judgment obtained by Benjamin Jordan, assignee of Reuben Jordan, against him, as surety for a certain Abner Witt, in a bond for 9,000 pounds of tobacco, dated the 13th of January, 1780. The bond was assigned the 20th of September, 1782,1 and had a credit indorsed of 2,500 pounds of tobacco, received bj* the assignee the 7th of April, 3784. The credits claimed in the bill, were “for 3,600 pounds of tobacco, received by the said Jordan, on the 8th of August, 1786; for 2,500 pounds of tobacco received by Thomas Millar, attorney at law, September 5, 1785, by virtue of a judgment obtained by one Samuel Ferguson, against the said Witt, upon an order accepted by him, on account of the slave, for the price whereof the bond was given ; which order was drawn by the said Jordan ; for a hogshead of tobacco, paid by the said Witt to Joseph Tucker; for 1,500 pounds of tobacco, paid by the said Witt to David Shelton, by the direction of the said Jordan; and for 2,500 pounds of tobacco, paid Benjamin Jordan, the 7th of April, 1784.”
The answer of Reuben Jordan denied that any payment had been made on account of the said debt, except the quantity of 3,600 pounds of tobacco, settled for, and accounted for, by Benjamin Jordan.
John Jordan, administrator of Benjamin, filed an answer, stating, that he had no knowledge of the allegations in the bill; that the complainant had filed, in the county Court of Amherst, a bill of injunction, to stay proceedings on the judgment now in question; in which bill he stated nearly the same grounds of equity as those stated in the present bill; that the said Benjamin Jordan regularly defended that bill; and that the same was dismissed by the Court of Amherst, after hearing the parties. The respondent relied on the answer filed, by his intestate, to the bill in Amherst Court; and farther set forth, that he always understood, and believed, his intestate was not personally interested in the *773 collection of the bond, which *was assigned to him merely for the purpose of collecting it more conveniently, as Reuben Jordan (the obligee) did not reside in Virginia; and that the amount, when collected, was to be applied to the payment of a debt due from the said Reuben to the estate of Charles Irving, for which the said' Benjamin was agent. “This belief was founded on conversations which the respondent had with his intestate.”
A transcript of the proceedings in Amherst county Court was an exhibit, from which it a-ppeared that Reuben Jordan’s answer to the bill there filed, was, in substance, the same with his answer in the present case. The answer of Benjamin Jordan stated, that he gave a valuable consideration for the bond before it became due; that, after it became due, he presented it to Abner Witt, “who acknowledged it, and promised payment, and accordingly paid three hogsneads of tobacco, for which credit was given ;* and, if he had paid Reuben Jordan any thing, it must have been paid since he knew of the assignment.” It did not appear that the bill was dismissed by the county Court; but that, on the 25th of May, 1798, the injunction was there dissolved, a decree rendered for costs, and a motion of the complainant, for an appeal, overruled.
The bill in the superior Court of chancery, was filed in August, 1798, and a new injunction granted.
In October, 1804, by consent of parties, the Court referred the accounts, between them, to one William Crawford. In March, 1805, John Jordan caused the suit to be set for hearing. In March, 1806, on the defendant’s motion, the accounts were referred to a commissioner of the Court, who made his report the 6th of October following ; on the face of which it appeared, that when a notice, requiring the attendance of the parties, had been issued, but not returned, the commissioner proceeded to ^examine and state the accounts, at the instance of the counsel for the defendants. In addition to the credit endorsed on the bond, he allowed the complainant a credit, on the 11th of March, 1783, for 2,100 pounds of tobacco, for which an order was drawn by Benjamin Jordan on Abner Witt, bearing that date, and accepted by him; but rejected the other credits claimed in the bill. To this report the complainant excepted, “because no notice had been given of the time of executing it; or, at least, none appears to have been delivered; and because the credits, to which the evidence entitled him, had not been given.” The cause was heard, by Chancellor Taylor, the day after the report came in; though the plaintiff objected, and moved a recommitment; but the hearing appears to have been ‘ ‘on the bill, answers, replication, and exhibits;” (without regarding the report;) whereupon, the chancellor, “setting aside the order for account made in this cause,” dismissed the bill, with costs: from which decree an appeal was granted, and writ of supersedeas awarded, by a judge of this Court.
The cause was submitted without argument; and the following opinion of this. Court was pronounced by Judge Roane, on Thursday, the 7th of January, 1813,
‘ ‘The Court is of opinion that the pend-ency of the suit in the county Court of Amherst, referred to in the answer of the appellee, John Jordan, was no bar to the relief prayed for in the Court of chancery; and that the said decree is erroneous in dismissing the bill; both because there was. no notice given to the appellant of the time and place of taking the account, and because it appears, by a report, not excepted to by the appellees, that the appellant was entitled to a credit for 2,100 pounds of tobacco.”
Decree reversed, and the cause remanded to the Court of chancery, “with directions to that Court to have an account taken between the parties, on due notice; and if, upon such account,“ it shall appear that the representatives *of Charles Irving, deceased, have no claim to the debt in controversy, that the injunction be made perpetual as to all payments made either to Reuben or Benjamin Jordan 5 otherwise, only as to such sum, or sums, as it shall appear had been paid to Reuben Jordan before notice of assignment, or to Benjamin Jordan after, and which have not been credited on the bond, and dissolve the injunction for the balance; and in this latter event, also, to decree, that Reuben Jordan do pay to the appellant any sums received by him after notice of the assignment, so soon as the appellant shall have paid the amount of the judgment at law, or such part thereof as he shall be awarded to pay.”

Note. This allegation appears to have been incorrect; the only credit given on the bond being for 3,500 pounds of tobacco. — Note in Original Edition.